IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GUY ALMA REAM<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION IN LIMINE AND EXCLUDING TIME<br><br>Case No. 2:10-CR-688 TS |

## I. INTRODUCTION

Defendant is charged with one count of threatening a federal officer, a United States postal employee. He has filed several documents seeking to have the Indictment dismissed and to exclude evidence of his actions at the post office. The Court has liberally construed and considered all of Defendant's filings and denies the Motions to Dismiss and the Motion in Limine.

## II. PROCEDURAL BACKGROUND

Defendant is currently representing himself with the aid of standby counsel. He has filed a series of documents seeking to have the Indictment dismissed or to exclude

evidence of his alleged statements and actions. On January 26, 2011, Defendant submitted a "Notice of Provisional Injunction and counter claims"[1] raising three general issues: false arrest, double jeopardy, and malicious prosecution. The Court will construe this as Defendant's First Motion to Dismiss. On March 4, 2011, Defendant filed a Motion to Dismiss "for any reason that the Court might find adequate for dismissal."[2] Defendant subsequently filed, on March 17, 2011, a "Motion of Retraxit" for the March 4, 2011 Motion to Dismiss.[3] Although it appears that by the Retraxit, Defendant meant to withdraw the Second Motion to Dismiss, he subsequently filed a memorandum in support of that Motion. Therefore, the Court will consider that Motion.

On March 17, 2011, Defendant also filed two documents. One is styled "Preliminary Indictment for counter claims of material misrepresentation."[4] This filing raised issues of false indictment, double jeopardy, and deprivation of constitutional and human rights. The Court will construe this filing as Defendant's Third Motion to Dismiss. The other is a Motion in Limine.[5] It seeks to suppress his statements made at the post office, as excited or frustrated utterance protected by the free speech clause of the constitution; seeks to

---

[1] Docket No. 33.

[2] Docket No. 43 (Defendant's Second Motion to Dismiss).

[3] Retraxit is a "plaintiff's voluntary withdrawal of a lawsuit in court, . . . in modern practice, retraxit is called voluntary dismissal with prejudice." *Blacks Law Dictionary* 1431 (9th ed. 2009) (italics omitted). For future reference, a motion may be withdraw in a case by filing a "Withdrawal of Motion."

[4] Docket No. 54.

[5] Docket No. 53.

exclude evidence of his statements as prejudicial under Fed. R. Evid. 403; and argues that his actions did not constitute a crime because of a lack of physical proximity and, therefore, the charges are a violation of the Universal Declaration of Human Rights.

On March 15, 2011, the government filed a response to Defendant's filings of January 26, and March 4, 2011. On March 23, 2011, Defendant filed a memoranda in response to the government's memorandum. On March 30, 2011, the government filed a memorandum addressing the vindictive prosecution claim made in Defendant's March 17, 2011 "Preliminary Indictment" and the March 17, 2011 Motion in Limine.

### III. DISCUSSION AND CONCLUSIONS

The Court has considered all of the filings and memoranda, the arguments of the government and of Defendant at the hearing, and will deny Defendant's requests to dismiss this case and to exclude evidence of his utterances and actions at the post office for the following reasons.

A. Vindictive Prosecution

Defendant asserts vindictive prosecution based on three theories. First, that the government unfairly sought a mental competency examination based on the fact that he has a scar on his head. Second, that there is no basis for the offense, which Defendant argues should have been brought as a petty offense. Third, that the government brings the federal charges in violation of the double jeopardy clause because there were state charges arising from the same incident.

In examining claims for prosecutorial vindictiveness, the Tenth Circuit has explained as follows:

3

The Supreme Court has stated the very purpose of instituting criminal proceedings against an individual is to punish; therefore, the mere presence of a punitive motivation behind prosecutorial action does not render such action constitutionally violative. However, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' "[6]

While a prosecutor may penalize a defendant for violating the law, a prosecutor may not punish a defendant for "exercising a protected statutory or constitutional right." Therefore, our focus in analyzing a claim of prosecutorial vindictiveness must be whether " 'as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus toward the defendant because he exercised his specific legal right.'"[7]

To prove prosecutorial vindictiveness, the defendant must prove either (1) "actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." If the defendant proves either element, the burden shifts to the government to justify its prosecutorial decision based on "legitimate, articulable, objective reasons." If the defendant fails to prove either element, the trial court need not address the government's justification for its prosecutorial decision. Merely by the appearance of vindictive motives, vindictiveness may not be presumed.[8]

1. Competency

On the issue of the competency evaluation, the government points out that the competency examination was conducted at the order of the Court. Further, it points out that possible head trauma was only one of the several reasons it sought an evaluation to

---

[6]*United States v. Contreras*, 108 F.3d 1255, 1262 (10th Cir. 1997) (quoting *United States v. Goodwin*, 457 U.S. 368, 372 (1982); *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).

[7]*Id*. (quoting *Goodwin*, 457 U.S. at 372) (further quotation omitted).

[8]*United States v. Sarracino*, 340 F.3d 1148, 1177 -1178 (10th Cir. 2003) (quoting *United States v. Lampley*, 127 F.3d 1231, 1245 (10th Cir. 1997); *United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir.1991)).

4

establish competency and that the possible effects of head trauma have been held to be relevant in competency proceedings.

A brief history of the competency proceedings will be helpful. On September 1, 2010, the government filed a motion for a competency evaluation based on the following three things: Defendant's alleged behavior during the alleged offense, the nature of his extensive criminal history, and his behavior during his initial appearance where he allegedly appeared to misunderstand the nature of the proceedings. At Defendant's September 2, 2010 detention hearing, the Magistrate Judge heard the government's request for a competency evaluation, Defendant's response, observed Defendant's behavior, and ordered an evaluation for the purpose of determining the factors of dangerousness and risk of flight. On September 14, 2010, the Magistrate Judge temporarily denied the government's motion for a competency evaluation, but also ordered an evaluation for the purposes of detention. The issue was raised again at a September 28, 2010 hearing. The minute entry[9] memorializes Defendant's conduct in repeatedly interrupting the judicial proceedings despite the Court's admonition not to do so. It also memorializes the Court's observation that Defendant failed to make eye contact. At that hearing, the limited evaluation for the purpose of assessing dangerousness and risk of flight was received, but it did not include an evaluation of the Defendant's possible head trauma. The government renewed its request for a competency examination and requested that such examination consider the possible head trauma or traumatic brain injury.

---

[9]Docket No. 15. *See also* transcript of hearing filed at Docket No. 26, attachment No. 1.

On October 13, 2010, Defendant's counsel filed an extensive brief in opposition to the government's request for a competency evaluation. The government's Reply argued that four factors supported its request for a competency evaluation, including the earlier limited evaluation[10] prepared for purposes of assessing dangerousness and risk of flight.

A hearing was held on October 21, 2010. After hearing the government and the Defendant, reviewing the record, and again observing the Defendant, the Court ordered a competency examination. The Order for a Competency examination provides: "the Court has observed a scar on Mr. Ream's head, and the Court requests additional information on whether there is evidence he has suffered a traumatic brain injury or head trauma, and if so, how would this injury impact his ability to understand the proceedings against him, or to assist properly in his defense."[11] Defendant appealed that Order for a competency examination. In support of the Order, the Government filed its brief as well as the transcripts of the prior proceedings involving the issue.

On October 26, 2010, the Court held a hearing on the appeal from the Order for Psychiatric Examination. Based on the entire record, that Order was affirmed and a competency evaluation ordered. Eventually, Defendant was found to be competent.[12]

The Court finds no evidence of vindictive prosecution in connection with the government's request for a competency examination. "There is no vindictiveness as long as the prosecutor's decision is based upon the normal factors ordinarily considered in

---

[10]Sealed Docket No. 22.

[11]Docket No. 23, at 2-3.

[12]Docket No. 44.

determining what course to pursue, rather than upon genuine animus against the defendant for an improper reason or in retaliation for exercise of legal or constitutional rights."[13] Here, federal law expressly provides the government "may file a motion to determine the mental competency of the defendant."[14] However, it is the Court, and not the government, that (1) makes the decision whether or not to order a psychiatric or psychological examination[15] and (2) determines whether or not there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."[16]

The government's requests were based on several factors other than the possible traumatic head/brain injury, including an independent limited evaluation ordered by the Magistrate Judge to assess factors such as dangerousness. Together, those factors were sufficient by themselves as a basis to request for a mental competency exam even absent the information on a possible head/brain trauma. Further, it is not evidence of vindictiveness for the government to include all information it deems relevant in its motion to the Court, including possible head/brain trauma, because such trauma can be relevant

---

[13] *Raymer*, 941 F.2d at 1042 (quoting *United States v. DeMichael*, 692 F.2d at 1059, 1062 (10th Cir. 1982) (additional citations omitted)).

[14] 18 U.S.C. § 4241(a).

[15] *Id*. § 4241(b).

[16] *Id*. § 4241(a).

7

information when making a competency determination.[17] Including such information and its possible bearing on a Defendant's competency are precisely the type of "normal factors ordinarily considered in determining what course to pursue," which do not show animus.

Further, the decision for a competency examination was made by the Court who heard all of Defendant's objections to a competency evaluation and considered all of the factors, including the independent evaluation and its own observations of the defendant during four hearings held between September 1, 2010, and October 4, 2010. Upon appeal, that decision was reviewed by a second judge who also ordered a competency examination. There is simply no evidence of animus against Defendant for an improper reason or in retaliation for exercise of legal or constitutional rights and, therefore, no evidence of vindictive prosecution in connection with the government's requests for a competency examination.

2. Indictment

Defendant is charged with one Count of threatening to assault and murder a federal official (a postal service employee) with intent to impede, intimidate and interfere with such official, while engaged in and on account of the performance of official duties and with

---

[17] *See e.g. United States v. Wiggin*, 429 F.3d 31, 35-36 (1st Cir. 2005) (upholding trial court's determination that defendant was competent even though trial court had "noted" on the record that "it was troubled that the record was not developed with respect to [the defendant's] possible organic brain injury" and had ordered that the defendant be examined by expert "to establish whether or not he does suffer from some mental defect or disease"); *United States v. No Runner*, 590 F.3d 962, 963 (9th Cir. 2009) (noting trial court granted the defendant's request for a competency evaluation based on traumatic brain injury and lack of memory).

intent to retaliate against such federal official in violation of 18 U.S.C. §115(a)(1)(B).[18]   In several of his filings, Defendant argues that there was no threat, no physical contact, and that his actions were protected by free speech.  Therefore, he argues that his alleged actions do not satisfy the elements of the charged offense.  He argues that maintaining the charges against him is malicious and is a material and/or willful misrepresentation.

The section under which defendant is charged, 18 U.S.C. § 115(a)(1)(B), does not list as an element of the offense that there be physical contact or weapon—only that there be a threat accompanied by the other elements described therein.  As courts have explained:

> We have previously defined a true threat as a declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another, or to injure another or his property by the commission of some unlawful act.  A true threat goes beyond the pale of protected vehement, caustic . . . unpleasantly sharp attacks on government and public officials.  However, a true threat does not require the speaker to actually intend to carry out the threat.  Nor does it require proof that he or she had the apparent ability to carry out the threat.  The question is whether those who hear or read the threat reasonably consider that an actual threat has been made.  It is the making of the threat and not the intention to carry out the threat that violates the law.  The trier of fact, therefore, must decide whether a reasonable person would find that a threat existed.
>
> Whether a communication constitutes a true threat rather than protected political speech is a question we generally leave for the jury.  Deciding that issue requires a fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant.  But we recognize that in those instances in which a defendant's

---

[18] Indictment at 1-2.

9

communication constitutes unquestionably protected speech, the court may dismiss the charge as a matter of law.[19]

In the present case, the government has proffered what its evidence at trial will include that Defendant "yelled in a loud tone of voice, attempt[ed] to dislocate a computer terminal and ripp[ed] his shirt off."[20] Defendant proffers that his statements were "ambiguous, spontaneous, and without criminal intent,"[21] that any threat was disregarded when he was peacefully turned away at the counter,[22] and that any threat was eliminated or absolved because it was caused by his attempt to obtain mail,[23] that his actions were not a threat within the meaning of the statute because he lacked intent,[24] and that communications that are merely insulting, rude, belligerent, etc., are not a threat unless it is also a direct threat.[25] These arguments raise classic jury questions of fact. It will be up to the jury to determine if Defendants' communications were a true threat and, therefore, whether Defendant violated the statute.

---

[19] *United States v. Wolff*, 370 Fed. Appx. 888 (10th Cir. 2010) (quoting *Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1167 (10th Cir. 2009); United States v. Viefhaus, 168 F.3d 392, 395 (10th Cir. 1999) (additional quotations and citations omitted)).

[20] Docket No. 45, Govt's Mem. at 3.

[21] Docket No. 56, Def's Mem. at 1.

[22] *Id*. at 3.

[23] *Id.*

[24] *Id.* at 5.

[25] *Id.*

As discussed above, there may be the unusual case where it is possible to determine if "a defendant's communication constitutes unquestionably protected speech."[26] However, this is not such an unusual case.[27] To begin with, Defendant has not proffered the exact content of the communications themselves. Second, the circumstances of Defendant's making the communications are, as noted above, disputed[28] and, therefore, there is a jury question on whether one or more of those communications were a true threat.

In sum, Defendant has not shown vindictiveness in the prosecution bringing this case before grand jury, has not shown that the Indictment was brought in retaliation for his exercising a specific constitutional right, and has not shown that the Indictment should be dismissed for insufficiency.

3. Double Jeopardy

> First, to invoke the Constitution's protection against double jeopardy, naturally one must have been subjected to jeopardy for a first time. It is a "fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy."[29]

---

[26] *Viefhaus*, 168 F.3d at 397.

[27] *See Watts. v. United States*, 394 U.S. 705 (1969) (reversing conviction based on its holding that "the kind of political hyperbole indulged in by the petitioner" did not fit within the statutory term "threat" which required the government to prove a "true threat").

[28] In *Watt*, *supra*, the reversal was rendered after a trial in which the evidence of context showed that the communication was made during a political debate, was "expressly conditional" on a future event that the speaker vowed would never occur, and that the subsequent reaction of the defendant and crowd was laughter.

[29] *United States v. Wampler*, 624 F.3d 1330, 1340-41 (10th Cir. 2010) (quoting *Serfass v. United States*, 420 U.S. 377, 393 (1975)).

"Jeopardy attaches in a jury trial 'when the jury is empaneled and sworn' and in a bench trial "when the court begins to hear evidence.'"[30] When a criminal case is resolved by a plea and sentence, jeopardy attaches when a "guilty plea is accepted and perhaps not until even later."[31] "The burden of establishing a double jeopardy claim is on defendant."[32]

In this case, Defendant has not shown that jeopardy attached regarding his state court charges. Defendant has not shown that a jury was impaneled, a witness called in a bench trial, or that he pleaded guilty in either the state case or this federal case. Thus, there can be no double jeopardy because jeopardy has not attached in either case. Because there can be no double jeopardy absent a showing that jeopardy attached, the Court need not address Defendant's other arguments regarding double jeopardy.

B. Motion to Dismiss

Defendant brings the same arguments, discussed above, in support of his Motion to Dismiss. He argues that this federal charge results in double jeopardy because he was already charged in state court, that there was no physical contact without a direct threat, and that the government's action in seeking a competency evaluation by physical appearance (the scar on his head) was malicious.

Each of these arguments has been addressed above. The Court finds that the Indictment does allege the elements of an offense under 18 U.S.C. § 115(a)(1)(B) and that Defendant's argument that his conduct did not violate the statute raises jury questions.

---

[30] *Id*. (quoting *Crist v. Bretz*, 437 U.S. 28, 36 (1978)).

[31] *Id*. (citations and footnote omitted).

[32] *United States v. Jones*, 816 F.2d 1483, 1486 (10th Cir. 1987).

12

For that reason and the reasons stated above, Defendant's arguments do not provide grounds to dismiss this case.

C. Motion in Limine

Defendant seeks to exclude evidence of his communications during the incident because the Indictment is insufficient as there was no physical proximity, the communications are constitutionally protected free speech as excited utterances or remarks of spontaneous frustration and, under Fed. R. Evid. 403 as ambiguous, prejudicial or misleading.

For the reasons previously stated, physical contact or proximity is not a required element of the offense, the Indictment is sufficient, and the claim of constitutionally protected speech raises a jury question. The rule regarding "excited utterances" is a rule of inclusion, not exclusion.[33] Further, because the declarant was Defendant, they are not hearsay but are admissions of a party opponent.[34]

Rule 403 provides that

---

[33] *United States v. Smith*, 606 F.3d 1270, 1279 (holding that Fed. R. Evid. 803(2)'s hearsay exception for statements relating to a "startling event or condition" . . . has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event.") (quoting *United States v. Pursley*, 577 F.3d 1204, 1220 (10th Cir. 2009)).

[34] Fed. R. Evid. 801(d)(2)(A); *see United States v. Quintana*, 70 F.3d 1167, 1170 (10th Cir. 1995) (admitting tape recordings and transcripts of conversations to which defendant was a party under Rule 801(d)(2)(A) as admissions of a party opponent and, therefore, not hearsay).

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, . . . .

"Under Rule 403's balancing test, it is not enough that the risk of unfair prejudice be greater than the probative value of the evidence; the danger of that prejudice must substantially outweigh the evidence's probative value."[35]

Courts have admitted statements that form the substance of the alleged offense as well as those forming the context of the alleged offense despite a defendant's claim that they should be excluded under Rule 403 as unduly prejudicial.[36] However, it is not possible to conduct the required Rule 403 balancing test for statements made by a Defendant as part of the alleged offense without considering the exact statements at issue. Defendant has not proffered the exact statements he seeks to exclude under Rule 403. Therefore, the Court will deny the Motion in Limine without prejudice to raising the Rule 403 issue at trial.

## IV. ORDER

In conclusion, the Court notes that, at argument on his Motions, Defendant requested that this case move forward quickly to trial. Defendant is advised that every pretrial motion he files automatically tolls the time under the Speedy Trial Act, 18 U.S.C.

---

[35] *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008).

[36] *See United States v. Young*, 401 Fed. Appx. 316, 319 (10th Cir. 2010) (finding that the "highly probative" value of Defendant's statement that he should have "blasted" officers trying to arrest him substantially outweighed any prejudice under 403 because it "went to the very heart of the sole issue before the jury for resolution: whether [defendant] possessed a gun on the night of his arrest").

14

§ 3161(h)(d) until the Motion can be decided. For example, Defendant still has a pending Motion for Release on Own Recognizance by promise to appear.[37] Resolution of this Motion appears to be dependent on the ongoing pretrial detention and release issues.[38] When a motion is filed, the other side must be given an opportunity to respond, and then there is required time allowed for filing a reply. Defendant may file motions as he deems appropriate but should be aware that the filing of such motions tolls the time under the Speedy Trial Act. Based on the foregoing, it is therefore

ORDERED Defendant's Motions to Dismiss (Docket Nos. 33, 43, and 54) are DENIED. It is further

ORDERED that Defendant's Motion in Limine (Docket No. 53) is DENIED without prejudice to the raising of Rule 403 issues at trial by appropriate written motion. It is further

ORDERED that the time from the filing of the Motions to the date of this order is excluded in computing the time within which the trial must commence pursuant to 18 U.S.C. § 3161(h)(1)(D) and (H). It is further

---

[37] Docket No. 51.

[38] *See* proceedings at Docket Nos. 55, 58, 61, 65, and 68 and conditions of Release at Docket No. 66. It appears that there will be further proceedings to review release after an evaluation is completed. *See* Minute Entry at Docket No. 68.

ORDERED that because this case has been delayed by the necessary competency proceedings, new counsel proceedings, and to resolve Defendant's many filings, the Court finds that trial preparation will not have started. Now that the competency issues and pretrial motions are resolved, the Court will immediately set this case for pretrial conference and jury trial dates by separate notice. It appears that the time is still excluded because Defendant's Motion for Release has yet to be finally resolved due to necessary proceedings and a pending evaluation.

DATED   May 23, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge