1            IN THE UNITED STATES DISTRICT COURT

2                    DISTRICT OF UTAH

3                    CENTRAL DIVISION

4

5   UNITED STATES OF AMERICA,    )

6            Plaintiff,          )

7      vs.                       )   Case No.  2:10-CR-688 TS

8   GUY ALMA REAM,               )

9            Defendant.          )

10  _____)

11

12          BEFORE THE HONORABLE TED STEWART

13          ---------------------------------

14                  March 31, 2011

15                  Motion to Dismiss

16

17

18

19

20

21

22

23

24  REPORTED BY: Patti Walker, CSR, RPR, CP

25  350 South Main Street, #146, Salt Lake City, Utah  84101

```
 1                    A P P E A R A N C E S

 2

 3

 4   For Plaintiff:                Karin Fojtik, AUSA
                                   185 South State Street, #300
 5                                 Salt Lake City, Utah  84111

 6

 7

 8   For Defendant:                Guy Alma Ream
                                   Pro Se
                                   5415 South 4299 West
 9                                 Kearns, Utah  84088

10

11   Standby Counsel:             Robert Steele
                                   UTAH FEDERAL DEFENDER OFFICE
                                   46 West Broadway, #110
12                                 Salt Lake City, Utah  84101

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1    SALT LAKE CITY, UTAH; THURSDAY, MARCH 31, 2011; 10:00 A.M.

 2                        PROCEEDINGS

 3          THE COURT:  We are here in the case of United

 4    States of America vs. Guy Alma Ream.  This is case

 5    10-CR-688.  Representing the United States is Ms. Karin

 6    Fojtik.  Mr. Ream is representing himself, although he is

 7    assisted by Mr. Robert Steele as a standby counsel.  The

 8    purpose of this hearing is to hear argument on defendant's

 9    motions that the Court has concluded are, in effect, motions

10    to dismiss.

11          Mr. Ream, if you would like to proceed with your

12    argument.

13          MR. REAM:  Thank you, Your Honor.

14          I have prepared today just a 30-point argument

15    sheet.  It's brief statements of point in argument made

16    relevant to the case.  Most of them have been previously

17    stated in the case documentation.  Some of them are new.

18    But it's just reduced to 30 points in an effort to maintain

19    reasonable content of motions and pleadings, which would be

20    30 pages.  So this is just one page with 30 brief

21    statements.  I'm going to run through that and explain

22    those.

23          THE COURT:  Mr. Ream, would it be more convenient

24    for you to either come to the podium or to sit?  I'm having

25    difficulty hearing you.  If you would like to sit, that

1    would be fine with the Court.

2              MR. REAM:  Thank you, Judge.

3              Okay.  This 30-point statement sheet relevant to

4    maximum content or full content for pleadings and motions is

5    to just prove points of the defense and consider violations

6    of the government, whether ignorant or intentional.  It's

7    just -- also ultimately pursuant to a motion to dismiss

8    today.

9              Disproven or eliminated intent of threat and a

10   tantrum was under control prior to the police ever arriving.

11   The defense was waiting by himself of his own volition in

12   the office or the hall of the post office for the police to

13   show up after an instance of contumely, excited utterance.

14   I did get out of hand.  I was belligerent with my right for

15   freedom.

16             Two, positive pursuit of correspondence was the

17   intent of the defendant that day, to retrieve mail,

18   correspondence from a previous pending case.  A 30-day

19   limitation was broken.  The defendant had a conviction on

20   that limitation and accused the post office of infidel --

21   infidelity of their duties to retain or offer the mail into

22   my post office box.  I know that the courts usually don't

23   violate the limitations.  They are very good at that because

24   they know it's potentially harmful to any litigation.  My

25   conviction did get the best of me that day.

1          Number three, false pretenses of threat.  Lack of

2    premeditation.  I didn't expect to lose my temper.  I have

3    been very good with that in my adult life so far, up to this

4    point.  My temper hasn't been an issue in my adult life.

5          Number four, incident invoked by judicial

6    disregard and breach of duty to meet limitation.

7          Number five, government circumstantial duress.

8    Spontaneous excited utterance was the only mouth action of

9    the defendant.  And the government took advantage of that,

10   charged him with a serious federal crime, arbitrarily

11   arrested him on the day in question -- well, the day no

12   longer in question because it was served as a disorderly

13   conduct.

14         Number six, bad faith against rights.  The

15   government acted in bad faith.  The incident was without

16   tribulation and hardship.  Nobody was hurt.  There was

17   minimal property damage.  Somebody angrily spilling

18   somebody's coffee, although it burned nobody, I was charged

19   with a serious crime.

20         Number seven.  Later I was kidnapped and abducted

21   from a positive employment association for the negative

22   cause violating my rights and double jeopardy,

23   constitutional immunity.

24         Number eight, government violation against freedom

25   of speech was the construed --

1          THE COURT:  Excuse me, Mr. Ream.  If I may, could

2     I get you to go back to -- the issue of double jeopardy was

3     not clear to me from your written memorandum.  I'm not sure

4     that I understand it.  Could you explain that a little bit?

5          MR. REAM:  Yes, I could elaborate for you.  I

6     would just like to say that double jeopardy is a highly

7     controversial subject in legal matters nowadays because of

8     wont of prosecution and need for protection of rights.  Both

9     are very heated passions of a litigant, and I feel that

10    jeopardy and beyond jeopardy is when a person has been

11    deprived of life, liberty and property by incarceration for

12    more than 24 hours.  In this case, it was four days, expired

13    a federal detainer, a 72-hour detainer for people that are

14    not on probation.  It's a five-day detainer for people that

15    are.  I expired my detainer in a position of hardship.  I

16    believe that's in the motion to dismiss that was submitted.

17         THE COURT:  Thank you.

18         MR. REAM:  The government's violation of freedom

19    of speech, contumely, excited utterance.  It was construed

20    of an immunity, and that's wrong.  You can't construe a

21    crime out of a right, protected interest.

22         Number nine, fictitious charges, false indictment,

23    violation of 12(b)(3), Federal Rule of Criminal Procedure

24    12(b)(3).  False information, it's just where a

25    government -- no need for it.  It was rather needless other

1    than the cause for somebody to busy themselves negatively

2    and conflicting rights.

3            Number ten, government violation against Universal

4    Declaration of Human Rights.  11(2) penal offense.

5    Omissions that did not constitute a penal offense nor can a

6    penalty be applied, if necessary, at the time of the penal

7    offense.  I think that's pretty self-explanatory.

8            Number 11, the case is without federal

9    jurisdiction.  The government is lacking contestability by

10   the First and Ninth Amendment for cause of double positive

11   and therefore contorted and construed into a negative of

12   charges.  In the First Amendment it states expressly that

13   the freedom of speech is not to be abridged, abridged being

14   the key word.  In the Ninth Amendment it states expressly

15   that certain rights are not to be construed to deny or

16   disparage other rights retained by the people.  And these

17   two positives of rights --

18           THE COURT:  Mr. Ream, why don't you wait until you

19   take a sip of water there.

20           MR. REAM:  Thank you.  Excuse me.

21           These two positives of right construed in

22   abridgment under express meaning in the constitutional

23   provision are a double positive.  It's contorted and

24   perverted into a negative of a federal crime.

25           Number 12, government violation of double

1     jeopardy, twice beyond jeopardy.  Four days initially.  57

2     days later wrested or abducted from my employee association.

3     And 200 plus days in double jeopardy now.

4              Number 13, documentary and physical evidence is

5     contradictory to government accusations and findings.

6     Everything that the defense has presented has been

7     disregarded, just ignored.  I don't know whether by

8     belligerence or by a typical procedure and practice, you

9     know, just the norms of the court to ignore when rights are

10    in question or a violation is on the table.  But I feel that

11    I was done wrong by the prosecutrix and by the previous

12    magistrate, you know.  The final related to this paragraph

13    would be that I wanted to be released according to my own

14    effects of the Fourth Amendment with promise to appear

15    pretrial, and he denied me that release and just disregarded

16    that ethical canon of law, and I have no idea why.  There is

17    no reason or cause of logical process to be considered.  I

18    mean I have been very, very good with my independence within

19    the last ten years of my life.

20             This is also a violation of Rule 12(b)(4)(D).  The

21    government must state an essential basis for rulings on

22    motions.

23             Number 14, government prejudice speculation.  The

24    irrelevant scar.  There are a million other reasons why a

25    person would commit a crime than the mental instability or

1   insanity.  That's pretty much a last resort for somebody

2   who's bald-faced guilty, in my opinion.

3           Number 15, abuse of procedure by illicit

4   recommendation, obstructing defense.  Just the Sixth

5   Amendment right to have all considerations necessary for his

6   defense.  And I haven't had any of those considerations.

7   I've been denied a lot of them up to this point.  I

8   appreciate you, Judge, for hearing the motion today.  I

9   usually don't get a chance to speak in the hearings.  It's

10  rush in, rush out, a plea bargain, or jail time ultimatums,

11  and it's been quite annoying.

12          Sixteen, government imposed fictitious findings,

13  12(b)(4)(D).  Violation of Rule 12(b)(4)(D) of federal

14  criminal procedure.  The 12(b)(4)(D) is the government must

15  have -- I just stated.  I don't know how -- I'm getting kind

16  of rattle brained and parched.  Excuse me.  Full content

17  motion is a lot, isn't it?

18          12(b)(4)(D), government must state an essential

19  basis for findings, rulings on motions.  There was no

20  essential basis to impose an illicit prison number on the

21  defendant in this case, Your Honor.  I believe anybody would

22  be extremely offended at that, to have to go and deal with

23  federal convicts and be imposed to a prison number and

24  subject to all the rules and regulations of the federal

25  facility.

1          Seventeen, defense previously expired a federal

2    detainer for charges for 72 hours of a detainer for somebody

3    that's without previous felonies or on probation.

4          Eighteen, false classification and findings.  It's

5    a violation of Rule 12(b)(4)(G), which is custody and

6    release status.  The defendant was always in a status of

7    release from arraignment.  If I would have pled my case

8    competently or been prepared, I probably could have been

9    released.  Now I've done seven months needlessly.

10          Nineteen, defense's notice of provisional

11    injunction was according to rights consciousness.  It wasn't

12    issued for a motion to dismiss or support of a motion to

13    dismiss.  I was angry.  I was in a federal facility.  I was

14    extremely oppressed.  I was beyond aggravation.  I was

15    demoralized and I was -- I was very assertive and couth in

16    my writing of this motion.  And it may look like a tragic

17    piece of mutilation because of the lack of technology I had

18    to perform that motion.  But the motions are always much

19    better on computer.  I did get that motion in in assertive

20    progression according to rights consciousness.

21          Number 20, spurious representation of maximum

22    penalty for false charges.  The defense also in the pursuit

23    of the conviction and the job, I don't -- I'm glad I don't

24    have her job.  She is destined, determined and required to

25    make convictions, and I believe this got away with her in

1    this case.  She misrepresented the maximum on a penalty of a

2    charge that I'm not even guilty of or haven't been proven

3    guilty of.  You know, innocent until proven guilty.  I feel

4    that's really dangerous when somebody misrepresents a

5    maximum on a charge that isn't even feasible.  It makes it

6    look very serious against the individual and probably part

7    of the violation of the prison evaluation.

8        Twenty-one, government abused subsection 115

9    creating law arbitrary by a malicious opposite designated

10   purpose.  I believe that the intended purpose -- this is

11   opinionative, this isn't fact, but I believe the intended

12   purpose of Section 115 is to diminish serious crimes into a

13   threat.  You know, where people did have actual cause or

14   justification of minimal merit, they can diminish it into

15   Section 115 and give them a threat, give them a sentence of

16   a threat rather than a serious crime of assault or, you

17   know, intent to kill or whatever else there is within that

18   title.  But the malicious opposite happened here because of

19   Section 115 was construed of constitutional immunity.  I

20   didn't make any physical contact.  I didn't make any direct

21   or premeditated statements to the effect of trying to

22   assault or kill anybody.  It was a ridiculous instance.  I

23   was trying to retrieve a piece of mail that was not

24   available.  And it was a terrible fortuitous mishap.

25       Number 22, right not to be tried by the Tenth

1    Amendment impediment against Section 115.  This Tenth

2    Amendment would include the powers of the state stated under

3    the Tenth Amendment, that all the powers are not delegated

4    by the Constitution to the United States, relatively belong

5    to the states or to the people and remanded to the states or

6    to the people.  I don't recall exactly how that goes, but

7    something to that effect.  And the impediment against it is

8    obvious for the cause of double jeopardy, the First and

9    Ninth Amendment immunity.  So kind of ties in together.

10             Twenty-three, violation of Universal Declaration

11   of Human Rights, Article 5, arbitrary arrest, detention and

12   exile for 200 plus days.  And these are all just statements

13   that would warrant a dismissal for this case.  I hate to

14   drive it this hard and this long.  It's been a long seven

15   months.

16             Twenty-four, falsification of mental eval

17   justification.  In the rebuttal of Ms. Fojtik is the case

18   law doesn't even have the same instance of relevancy for

19   initiation.  The defense recommended the evaluations in

20   these cases she's talking about, according to this sanity

21   defense under 12.2 and the other provision, 4241, I believe

22   it is.  But the defense recommended them.  In this case, the

23   prosecution usurped the powers of the defense and imposed

24   this evaluation.

25             Twenty-five, subterfuge of double jeopardy, absent

1   of situation, the case law on this case is irrelevant.  And

2   in one case she proposes to be supportive of argument

3   doesn't even raise the case of double jeopardy because the

4   defendant was booked and released within three hours.  So he

5   didn't even serve the minimum requirement to be considered

6   jail time, which is 24 hours.  It's kind of moot there in

7   that case, Gutierrez vs. the United States.  The other one,

8   Wampler, was against a company for tax evasion, or to some

9   effect.  And it was totally irrelevant to my situation of

10  double jeopardy also.  And by violation of Rule 12(b)(3)(A),

11  a faulty prosecution.

12        Twenty-six, violation of the legal overbreadth

13  doctrine.  In a motion to dismiss, I believe I met the

14  procedural contraband.  That would be according to legal

15  overbreadth.  Anything that's construed of rights to deny or

16  disparage any other rights can be struck down on its face

17  because of its chilling effect.  Anything that violates

18  rights and is insignificant of offense, it's only logical

19  that it be thrown out.  This type of procedure happens all

20  the time under ignorant or inadequate representation.

21        Twenty-seven, government instigation of barratry,

22  demand for conviction.  I mean this is extremely offensive

23  to an individual when a prosecution demands a conviction to

24  the persistent extent of the current prosecutrix.

25        Twenty-eight, disregard for ethical canons

1    represented by the defense.  This is what I was referring to

2    as Magistrate Nuffer disregarded the ethical canons, that

3    was very long in a way and expected for my release in my

4    last hearing.  I was extremely disturbed and acquiesced to

5    his ruling on that.

6            Twenty-nine, security of papers.  Violation of

7    personal security by the Fourth Amendment, twice by the BOP

8    and the U.S. Marshals taking my documents so I can't study

9    the case.  I can't review the case.  I can't put together a

10    logical, legal argument.  Obstructing my defense is

11    crippling my capabilities to defend myself, which I

12    desperately need in a situation of little or no collateral.

13            Number 30, government's entire federal procedure

14    is defunct, reverse integration of collusion by moral

15    turpitude and prejudice against nearly all constitutional

16    and human rights.  And I believe all the statements made in

17    the motion to dismiss or the memorandum would be what I am

18    referring to as a motion to dismiss because the motion to

19    dismiss never existed.  It was a comity on a single page

20    filing for the prosecution to get the hint, but they did not

21    receive that, that judgment.

22            These seven statements that go a little bit, I

23    guess they are about the same as what I have been

24    expressing.  They just haven't been expressed in previous

25    documentation.  This is the complete argument for the motion

1    to dismiss.  The pleadings of January 26th, 2011, notice of

2    provisional injunction, are made in result of hideous and

3    extreme violation of defendant's rights, constitutional and

4    human, and not to be construed as exchangeable for

5    dismissal, although dismissal would diminish barratry

6    enacted by the prosecutrix.

7          Number two, because there is no reasonable,

8    feasible or legal cause for prosecution to persist in abuse

9    of process by pursuit of case 2:10-CR-688, she's now

10   performed complete reverse integration by falsification of

11   evidence standards in presenting reverse sinarial and

12   circumstantially absent case law for justification of

13   prejudice and willful disregard.  And I mean there is no

14   justification.  I'm sure we all wish there was at times.

15         That the question or point of mental evaluation to

16   determine competency to stand trial is moot or redundant

17   from the beginning for preemptive representation of right

18   not to be tried or contestability clauses of the First or

19   Fifth Amendment and for cause of beyond jeopardy, or post

20   retribute for four days served in Salt Lake County Jail for

21   disorderly dis-validating or discrediting case 2:10-CR-688,

22   and the case is currently without merit.

23         Considering all case law offered in improvident

24   response to motion to dismiss, the closest to anything

25   logically pertinent or consistent is those of the threat

1    category.  Closest thing to anything logically pertinent or

2    consistent is those of the threat category, which are still

3    drastically irrelevant by lack of premeditated or functional

4    intent.  These cases are also void of proper rights

5    representation.  In my opinion, I believe that the cases

6    didn't get the proper representation and that's why they

7    were convicted of these crimes of threat, just construed

8    constitutional immunity.  Not to the extent I have, of

9    course.  They had a little bit more culpability, but I

10   believe they could have been represented better.  I believe

11   they should be criticized against Section 115.

12          The ignorant and belligerent persistence of

13   pursuing it by the prosecutrix in this case presents -- is a

14   shockingly insulting -- represents a shockingly and

15   insulting aspect to all American rights and liberties in

16   complete disregard for hardship inflicted and continued

17   incarceration against the defendant by incompetent logic,

18   rendering moral turpitude in a draconian extreme of

19   prejudice and discrimination against equal rights.

20          Because Article 11.2, Universal Declaration of

21   Human Rights, states that no one be held guilty of a penal

22   offense for any acts or omissions that did not constitute a

23   penal offense.

24          THE COURT:  Mr. Ream, you need to slow down a bit.

25   Keep in mind that the court reporter needs to be able to

1    record what you are saying.  When you speed up, it makes it

2    difficult.

3         MR. REAM:  The reference is probably not exactly

4    correct in my recall of memory because I haven't had access

5    to curriculum to study to make sure, but this is how I

6    remembered it.  So Article 11.2, Universal Declaration of

7    Human Rights.

8         The malfeasant case brought by the prosecutrix is

9    not only a hideous and redundant violation of the Article

10   11.2, Universal Declaration of Human Rights, but also a

11   refutable case of circumstantial duress.  She's taken

12   advantage of my misfortune along with others involved.

13        Ultimately, if the prosecutrix, moreover the

14   Court, does not recurringly -- excuse me.  Let me start

15   over.

16        Ultimately, if the prosecutrix, moreover the

17   Court, does recurringly refuse to dismiss the present case,

18   the defense represents previous provisional injunction and

19   submits retraxit of motion to dismiss, along with other

20   documents to be served by the presiding justice, or the

21   Court, to the prosecution.  Also, the defense remands the

22   right to a speedy and requests that case 2:10-CR-688 be

23   fast-tracked or expedited accordingly.  That would be all I

24   have.

25        THE COURT:  All right, Mr. Ream.  Thank you very

1    much.

2            Ms. Fojtik.

3            MS. FOJTIK:  Your Honor, I would ask the Court to

4    direct me if I'm not heading in the right direction.  I

5    think generally it comes back to the three issues we've

6    raised in our response to the motion to suppress, which is

7    Mr. Ream's concern with the fact that he was arrested on

8    state charges.  Those were never filed.  He did a period of

9    incarceration on those before they were filed.  Then he was

10   subsequently arrested on federal charges, and his objection

11   that this is a violation of his rights, a double jeopardy

12   violation.

13           As we've indicated in our pleading and we've

14   indicated in court, jeopardy never attached in the state

15   case.  There was no jury impaneled.  He was never brought

16   before a Court.  Nothing happened on those cases.  They were

17   dismissed.  Our prosecution followed subsequently.

18           Also, we've discussed there is a unique federal

19   interest in this case.  It occurred at a post office.  It

20   occurred in relation to federal employees.  So that makes it

21   relevant for the government's purview on that particular

22   issue.

23           And I think the case law recited, and I think the

24   Court is well aware, this is not a double jeopardy

25   violation.  We have behaved appropriately.  We've filed the

1   appropriate charges based on the probable cause that was

2   brought to the government.

3           As to the second issue, the fact that Mr. Ream had

4   no contact with the victim, while I understand and I hear

5   Mr. Ream's concerns that he did not have the intent to kill

6   someone, he certainly -- and I think this is also noted in

7   case law -- his behavior, how he behaved, not just the words

8   articulated, but his behavior in that post office affected a

9   large number of people.  There were people in the post

10  office.  There was staff.

11          So his own personal subjective intent, he needs to

12  look beyond that.  What did the person behind the counter

13  think?  What did the person next to him in line think?  They

14  can't read his mind.  They can only look at his behavior.

15  That's what we respond to, their reactions to his behavior.

16  And that's where, and the case law supports, an intent can

17  be inferred from everything around the defendant as

18  behavior.

19          And we believe, should this go to trial, the fact

20  that he had no contact with the victim is irrelevant.  The

21  fact that he scared people is.  And that's what the evidence

22  we believe will show at trial.  We believe, more

23  importantly, that supports the filing of these particular

24  charges in this particular case.

25          As to his contentions that this conduct and his

1    behavior is somehow protected by the First Amendment, you
2    know, it goes to the old adage, if you yell fire in a
3    crowded theater, you can't be in a public space and cause
4    people to have fear.  That's the basis of these charges.
5    That conduct is not protected by the First Amendment.
6    That's what causes these conducts here today.

7              As to the competency evaluation and the decision
8    to impose -- request a competency evaluation, there's a
9    great deal of information in both the Court's docket and in
10   the information the government has provided about Mr. Ream's
11   behavior in court.  Judge Nuffer specifically noted during
12   several of the hearings he would not sit down.  He
13   interrupted the Court, and did not respond appropriately to
14   instructions.  That, as well as his behavior at the time as
15   well as physical indicators, supports the motion for
16   competency evaluation.

17             Importantly, we didn't grant that motion.  The
18   Court did.  That went both before Judge Nuffer and Judge
19   Kimball.  Mr. Ream -- any contentions he didn't have a
20   sufficient hearing, he had two judges looking at his
21   competency evaluation.  It went from Judge Nuffer to Judge
22   Kimball.  They both determined, based on what was before
23   them, that a competency evaluation was appropriate.  So as
24   to any concerns about that, the evidence is in the record
25   that supports that request.

1          The other thing, candidly, Your Honor, that's

2     underlying a great deal of this is Mr. Ream's frustration

3     with his detention.  And we did readdress that with Judge

4     Nuffer when we were before him last week.  Mr. Ream reraised

5     that.  And it came down to a single concern.  Judge Nuffer,

6     I don't think anyone disputes this, quite directly said, you

7     don't have an address.  This came down to the fact Mr. Ream

8     has no address.  He has no physical location.  And Judge

9     Nuffer very directly stated I've never released anyone from

10    custody without an address or someone somewhere that can be

11    reached or contacted while a case is pending.  That has been

12    an issue for several months.

13         There have been attempts to try to come up with a

14    place.  Mr. Ream initially would not disclose any family

15    members or contacts.  So it was his own reluctance to talk

16    to people about where he was going.  When we finally had

17    some options, efforts were made to contact people.  I think

18    it's fair to say efforts are still ongoing to find an

19    appropriate residence for Mr. Ream.

20         So as to those issues, is there anything more the

21    Court would like to hear from me?

22         THE COURT:  Do you wish to address the issue of

23    vindictiveness?  He raised it several times.

24         MS. FOJTIK:  There's a couple -- vindictiveness is

25    a two-level process.  One, you have to assert what right he

1   asserted that he was punished for.  And Mr. Ream is

2   asserting we were vindictive from day one.  So it's not

3   clear what right he asserted that he was then charged

4   federally with.  He had asserted we scooped him up and

5   kidnapped him.  So it wasn't in retaliation or in response

6   to something.  At that fundamental level, the claims must

7   fail.

8           MR. REAM:  Objection.  She's ignoring the First

9   Amendment.

10           THE COURT:  Mr. Ream, you had your opportunity and

11   nobody interrupted you except when I asked you two

12   questions.  You give her the same courtesy, please.

13           Go ahead.

14           MS. FOJTIK:  As to his second claim that there has

15   been a double jeopardy violation, this prosecution is

16   somehow in violation of that particular right, there are

17   many safeguards in the system, one being the grand jury.

18   The members of the grand jury found probable cause to charge

19   Mr. Ream.  That's one of the checks in the system.

20           MR. REAM:  Objection.  It was not endorsed by a

21   grand jury.  It was endorsed solely by Ms. Fojtik.

22           MS. FOJTIK:  To be clear, and the indictment says,

23   the grand jury charges, on the indictment.  So it was

24   returned by the grand jury.  So that's probable cause.  And

25   the decision to prosecute is not vindictive prosecution.  It

1    was a choice made by the government to respond to that.

2              As to the others -- let me just have a moment.

3              I come back to the same argument on the competency

4    evaluation.  I know he alleged vindictiveness related to

5    that.  That's not our decision.  That was Judge Kimball's

6    decision and Judge Nuffer's decision.  We did file the

7    motion, but the final decision was the Court's.  It's

8    unclear how we could be vindictive when the Court made the

9    final ruling.  We simply asked the Courts to consider that,

10   and they did.

11             THE COURT:  Ms. Fojtik, there are others that

12   Mr. Ream raised, but I think that the Court has what it

13   needs from you in response to the ones that the Court is

14   most concerned with.  So thank you.

15             MS. FOJTIK:  Your Honor, I do -- I may be

16   premature on this, but I thought of this walking over,

17   candidly, this morning, a way to kind of resolve this.  It

18   is very possible the government could file a misdemeanor

19   information in light of Mr. Ream's comments this morning

20   about his behavior, either maybe a misdemeanor assault or a

21   malicious destruction of federal property misdemeanor I

22   believe that we could file, that Mr. Ream's conduct would

23   meet that charge.  I think we could file the information and

24   possibly allow him to allocute on what happened that

25   particular day, and I think it would meet it.

1          As is very clear from here, it's very difficult

2    for me to approach Mr. Ream with any type of resolution.  He

3    has been reluctant to do that.  So it would have to be a

4    situation where we filed a misdemeanor information.  He

5    would allocute, I'm assuming.  The Court could determine if

6    the facts he acknowledged were sufficient to support that

7    information.  So there is that possibility of a way to

8    resolve this.  I'm not sure if Mr. Ream would be amenable to

9    that type of situation.  With that, I will submit it.

10          THE COURT:  You know that I cannot be involved in

11   that type of a discussion.

12          MS. FOJTIK:  I understand.  I'm just in a

13   difficult situation because I have no one to communicate

14   with on this situation.  And as was very evident, there is a

15   lot of personal anger directed at me.  So any efforts I make

16   are met with hostility.  I just need to put things on the

17   record.  I know you can't answer that.  I just wanted to put

18   that on the record.

19          THE COURT:  Thank you.

20          Mr. Ream, counsel, the Court appreciates the

21   arguments here today.

22          MR. REAM:  I would like to rebut some of what she

23   was saying.  I believe my co-counsel has been taking notes

24   for me.

25          THE COURT:  You may very briefly, Mr. Ream.

1          MR. REAM:  Charges, in fact, were filed --

2     misdemeanor charges were, in fact, filed, disorderly

3     conduct.  I served four days.  Expired a federal detainer.

4     Just extensive process of guilt without contest, you know.

5     Basically a guilty plea by no contest to those charges.  And

6     the hardship of jail time is unfathomable to people like the

7     prosecution.

8          The Fourteenth Amendment is the medium between the

9     federal and the state courts, basically regulating them both

10    to the confines of the Constitution.  Because the federal

11    court is a superior court which already, without instance or

12    reference, is taken for granted, you know, to be a

13    constitutional court.  While the state, they vary a little

14    until the Fourteenth Amendment is brought up, which also

15    remands them to the Constitution and the human rights.

16         She's saying a malicious cause.  Well, it's not so

17    much a malicious cause as an improvident cause.  It's not

18    beneficial to any American rights to pursue this type of

19    litigation with the instance of occurrence so insignificant.

20         Then the statements made, the documentary

21    evidence, there is really nothing that's incriminating of

22    the portrayal of the situation she portrays to have occurred

23    that day, you know.  It really wasn't that drastic.  I

24    believe the police were looking for an arrest.  They made

25    one.  They realized they made a mistake.  They dropped it to

1    a misdemeanor.  I served the time.  It should have been over

2    with, but 57 days later it was double jeopardy.

3         All the intent of me being malicious against the

4    prosecution is disproven by preemptive facts.  Everything is

5    backed up by legal provision or can be factually referred to

6    within the discovery.  It's a pretty cut-and-dried case.

7         And she's saying that you can't yell fire in the

8    theater.  It's true, because it's mischievous and it's

9    belligerent, it's ignorant.  I was under sort of a practice

10   and I made a mistake.  I lost my composure.  I believe

11   that's different.  I believe that has more merit than

12   somebody just out to cause trouble.

13        And the fact of the matter is that in the previous

14   hearings before the mental evaluation, I had uninterested or

15   unmotivated counsel.  I wasn't allowed to represent myself.

16   They kept telling me to sit down every time I would stand up

17   to represent my point of argument.  The unmotivated

18   individual would make legal mumbo jumbo jargon ineffectively

19   and without conviction of any defense at all solely

20   fulfilling a position at my table, a burden to my defense.

21   And this is why the malicious prosecution was so successful.

22        And the detention issue of having some merit or

23   some misdemeanor merit is irrelevant for the same cause of

24   double jeopardy.  Four days is a long time when you haven't

25   done anything wrong for ten years and you make a mistake.

1           And indictment was solely served by the

2    endorsement of Ms. Fojtik.  There was no grand jury

3    endorsement.  I believe that was taken for granted in the

4    indictment.  Now she's prosecuting the charges.  She still,

5    to this hearing, refuses in a relentless prosecution.

6           And I guess that would be all, Your Honor.

7           THE COURT:  Thank you, Mr. Ream.

8           The Court will take the issue of the motion to

9    dismiss under advisement and will issue a ruling as soon as

10   it can.  Thank you.

11          (Whereupon, the proceeding was concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4          I hereby certify that the foregoing matter is

5   transcribed from the stenographic notes taken by me and is a

6   true and accurate transcription of the same.

7

8

9

10

11

12

13

14

15

16   PATTI WALKER, CSR-RPR-CP      DATED:
     Official Court Reporter
17   350 South Main Street, #146
     Salt Lake City, Utah  84101
18   801-364-5440

19

20

21

22

23

24

25